# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

DANIEL SALAS,

Plaintiff,

v.

UNIVERSAL CREDIT SERVICES, LLC; GTPD ENTERPRISES, INC.; PRIORITY DOCUMENTS; EC LENDING, LLC; NEIL BILLOCK; and DOES 1-10,

Defendants.

Case No.: 17-CV-2352 JLS (BLM)

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

(ECF No. 15)

Presently before the Court is Defendants Universal Credit Services, LLC, GTPD Enterprises, Inc. ("GTPD"); Priority Documents ("Priority"); EC Lending, LLC; and Neil Billock's Motion to Dismiss or Compel Arbitration. ("Mot.," ECF No. 15.) Also before the Court is Plaintiff Daniel Salas' Opposition to ("Opp'n," ECF No. 16) and Defendants' Reply in Support of ("Reply," ECF No. 18) the Motion. After reviewing the Parties' arguments and the law, the Court rules as follows.

## BACKGROUND

Looking to repair his credit and get help settling his debt, Plaintiff decided to enroll in a debt settlement and repair services program. (First Amended Complaint ("FAC") ¶¶ 25–27, ECF No. 12.) After receiving promotional materials in the mail, Plaintiff decided

to enroll in Defendant Priority's debt settlement and repair services program, in part because it allegedly offered him a 100% money-back guarantee over the phone. *Id.* ¶¶ 25, 32, 85. Plaintiff signed the "Priority Documents Service Agreement" on March 9, 2016. FAC ¶ 32; ECF No. 12-2. The only signatories to the Agreement were Priority Documents and Plaintiff. ECF No. 12-2.

Before he received the promotional materials and entered into the Agreement, Plaintiff alleges that on February 8, 2016, Defendant GTPD obtained Plaintiff's credit report "without a permissible purpose" from Defendant Universal Credit Services, LLC. *Id.* ¶ 21. GTPD then allegedly passed Plaintiff's credit report to Defendants Priority; EC Lending, LLC; and the owner of Priority, Neil Billock, who also "directs the operations of GTPD and EC Lending, LLC." *Id.* ¶¶ 24–25.

After signing the Agreement, the relationship between the parties turned south. On the advice of Priority, Plaintiff stopped paying his credit card accounts "to facilitate more advantageous settlement arrangements." FAC ¶ 32, 33. Plaintiff made his monthly payments of $610.15 until, in November 2016, Plaintiff began receiving notices of suit for collection of debt on credit accounts Plaintiff had enrolled in Priority's program. *Id.* ¶¶ 33, 39, 44. After some back and forth, Plaintiff cancelled his Priority account on December 12, 2016. *Id.* ¶ 42. Thereafter, Plaintiff sought a refund of the $5,491.35 he paid to Priority; Priority declined to refund the money. *See id.* at 45–46.

In the FAC, Plaintiff brings claims against all Defendants under the Fair Credit Reporting Act ("FCRA") and the California Credit Reporting Agencies Act ("CCRAA"). Plaintiff also brings claims against EC Lending, Priority, and Billock under California Civil Code 1789.13.[1] These claims are predicated on Defendants "impermissibly furnishing and/or obtaining Plaintiff's consumer report as part of an improper venture to advertise,

---

[1] The Court notes that Plaintiff alleges violations of the Credit Repair Organizations Act ("CROA"), citing to 15 U.S.C. 1789.13; however, the CROA is located at 15 U.S.C.A. 1679 et seq. Based on the elements pled in Plaintiff's FAC, it seems that Plaintiff is actually bringing claims under California Civil Code section 1789.13. Under either statute, the Court's decision remains the same.

promote, and operate a business of soliciting clients for debt settlement and credit repair services." *Id.* ¶ 1. Finally, Plaintiff also brings claims for fraud and false promises against Priority for soliciting Plaintiff to enroll in the program and convincing him to stop paying his credit cards. *Id.* ¶¶ 1, 46.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts. *See* 9 U.S.C. §§ 1, *et seq.*; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–26 (1991). If a suit is proceeding in federal court, the party seeking arbitration may move the district court to compel the resisting party to submit to arbitration pursuant to their private agreement to arbitrate the dispute. 9 U.S.C. § 4. The FAA reflects both a "liberal federal policy favoring arbitration agreements" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotations and citations omitted); *see also Kilgore v. Keybank, Nat'l Ass'n*, 718 F.3d 1052, 1057 (9th Cir. 2013) (en banc) ("The FAA was intended to 'overcome an anachronistic judicial hostility to agreements to arbitrate, which American courts had borrowed from English common law.'") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n.14 (1985)); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) ("The [FAA] not only placed arbitration agreements on equal footing with other contracts, but established a federal policy in favor of arbitration, [citation], and a federal common law of arbitrability which preempts state law disfavoring arbitration.").

In determining whether to compel a party to arbitration, the Court may not review the merits of the dispute; rather, the Court's role under the FAA is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). If the Court finds that the answers to those questions are yes, the Court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). In determining the validity of an arbitration agreement, the Court applies state law contract

principles. *Adams*, 279 F.3d at 892; *see also* 9 U.S.C. § 2. To be valid, an arbitration agreement must be in writing, but it need not be signed by the party to whom it applies as acceptance may be implied in fact. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 233, 236 (2012).

## ANALYSIS

Defendants argue that there is a valid arbitration clause in the Agreement and, therefore, the Court should either (1) dismiss the claim for improper venue or lack of subject matter jurisdiction, or (2) compel arbitration and stay the case. Mot. at 2–5. Defendants further argue that the Court should not only compel arbitration of Plaintiff's claims against Priority—a signatory to the agreement—but also against the remaining Defendants (the "Nonsignatory Defendants"), who are not signatories to the Agreement. Mot. at 5–7. The Court will first address whether the arbitration clause is valid and whether it encompasses Plaintiff's claims against Priority and, second, whether the Court may compel arbitration of Plaintiff's claims against the Nonsignatory Defendants.

## I. Claims Against Priority

Plaintiff does not dispute that a valid arbitration agreement exists. Plaintiff instead disagrees with Defendants "about the threshold arbitrability question—that is, whether their arbitration agreement applies to [this] particular dispute." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). This "threshold arbitrability question" is itself a question of contract and, therefore, the FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Id.* (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–944 (1995)).

The arbitration clause in the Parties' Agreement states in relevant part that:

> In the event of any controversy, claim or dispute between the parties arising out of or relating to this agreement or the breach, termination, enforcement, interpretation, conscionability or validity thereof, including any determination of the scope or

4

applicability of this agreement to arbitrate, shall be determined by arbitration in California or in the county in which the consumer resides in accordance with the Laws of the State of California for agreements to be made in and to be performed in California. The parties agree that the arbitration shall be administered by the American Arbitration Association ("AAA") pursuant to its rules and procedures.

Agreement at 3, ECF No. 12-1.[2]

Plaintiff argues that his claims are not arbitrable because "[t]he majority of claims against the [D]efendants occurred before the Agreement existed." Opp'n at 9. Defendants counter that, although some conduct occurred before Plaintiff signed the Agreement, all of the relevant activity still arises out of and relates to the Agreement. Mot. at 4; Reply at 4.

While it's not immediately clear whether Priority and Plaintiff agreed to arbitrate the merits of Plaintiff's causes of action, what is clear is that the Parties agreed to arbitrate any dispute relating to the arbitrability of those claims. In the Ninth Circuit, "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Here, the arbitration clause explicitly incorporates the AAA Rules. Agreement at 3. And further, the Agreement states that "any determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration." *Id.* The Court is convinced that this is clear evidence that the Parties agreed to arbitrate any threshold questions of arbitrability.

Because the Parties agreed to arbitrate arbitrability, the Court has "no business" deciding whether the particular claims Plaintiff brings are in fact arbitrable, even if the

---

[2] Plaintiff argues in his Opposition that the Agreement, which Defendants' attached to their Motion as an exhibit, is not properly before the Court because the content of the Agreement constitutes impermissible hearsay and Defendants have failed to put forward any evidence of trustworthiness to authenticate the Agreement as a business record. Opp'n at 16–17. Plaintiff attached the Agreement to his FAC, however, and the Court must "consider and treat as true [Plaintiff's] factual allegations in the exhibits attached to [the] complaint." *Courthouse News Service v. Planet*, 750 F.3d 776, 780 n.4 (9th Cir. 2014). The Agreement, therefore, is properly before the Court.

1  Court were to consider Defendants' arguments for arbitration "wholly groundless." *Henry*

2  *Schein*, 139 S. Ct. at 529 (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643,

3  650 (1986).  Therefore, the Court **GRANTS** Defendants' Motion to Compel Arbitration

4  as it pertains to Plaintiff's claims against Priority.  Because the arbitrator may ultimately

5  decide that Plaintiff's claims are not in fact subject to arbitration, the Court **STAYS** those

6  claims, rather than dismissing them.

7  **II.    Claims Against the Nonsignatory Defendants**

8  Defendants next argue that although Defendants Universal Credit Services, GTPD,

9  EC Lending, and Billock did not sign the Agreement, they may still compel arbitration of

10  the claims against them.

11  "The United States Supreme Court has held that a litigant who is not a party to an

12  arbitration agreement may invoke arbitration under the FAA if the relevant state contract

13  law allows the litigant to enforce the agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d

14  1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 632

15  (2009)).  "Under California law, a party that is not otherwise subject to an arbitration

16  agreement will be equitably estopped from avoiding arbitration only under two very

17  specific conditions." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013).  Those

18  conditions are:

19  
20  
21  
22  
23  
24  
> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

25  *Kramer*, 705 F.3d at 1128–29 (adopting the equitable estoppel rule set forth in *Goldman v.*

26  *KPMG LLP*, 173 Cal. App. 4th 209, 221 (2009), as controlling statement of California

27  law).

28  ///

6

1    Defendants argue that under both *Goldman* prongs, the Court should find equitable

2    estoppel should apply.  Mot. at 5.  Plaintiff argues that Defendants' equitable estoppel

3    argument fails because "the claims against the nonsignatories are not grounded in the

4    Agreement."  Opp'n at 11.

5    Considering first Plaintiff's causes of action against Defendants EC Lending and

6    Neil Billock brought under California Civil Code section 1789.13(a), the Court finds that

7    Plaintiff must "rely on the terms of the written agreement in asserting [his] claims."  *See*

8    *Kramer*, 705 F.3d at 1128.  Plaintiff alleges numerous violations of section 1789.13, two

9    of which are relevant to the present inquiry.  First, Plaintiff alleges a statutory violation for

10   "charging or receiving consideration prior to full and complete performance."  FAC ¶ 81.

11   The full statutory section states that the complete performance due is for "the services the

12   credit services organization has agreed to perform for or on behalf of the buyer." Cal. Civ.

13   Code § 1789.13(a).   To determine what performance Priority owed Plaintiff before

14   receiving consideration, Plaintiff must rely on the Agreement's terms.  Second, Plaintiff

15   alleges a statutory violation for "failing to perform the agreed services within six months."

16   FAC ¶ 81.  The full statutory section states that the six-month period begins "following the

17   date the buyer signs the contract for those services." Cal. Civ. Code § 1789.13(b).  To

18   determine when performance was due, the date the parties entered into the Agreement must

19   be determined.  Under both these statutory provisions, Plaintiff must rely on the Agreement

20   between Priority and Plaintiff to meet the elements of the claim.  Therefore, Plaintiff is

21   equitably estopped from resisting arbitration of the claims brought under Cal. Civ. Code

22   § 1789.13.

23   Turning to Plaintiff's claims under the FCRA and CCRAA against the Nonsignatory

24   Defendants, the Court finds that Plaintiff "alleges substantially interdependent and

25   concerted misconduct by the nonsignator[ies] and [Priority] and the allegations of

26   interdependent misconduct are founded in or intimately connected with the obligations of

27   the underlying agreement."  *See Kramer*, 705 F.3d at 1128.  The Agreement states that

28   Plaintiff "authorize[d] . . . [Priority] to obtain a copy of [Plaintiff's] credit report(s).  If

[Priority] obtains a copy of [Plaintiff's] credit report, the inquiry will show up from either Priority or GTPD." Agreement at 1. Plaintiff alleges that Defendants procured Plaintiff's credit report and passed it from one Defendant to the next on February 8, 2016, which is interdependent conduct between the Parties. Although this conduct occurred before Plaintiff signed the Agreement, the Court finds that Plaintiff's claims are intimately connected to the obligations agreed to by Priority. Priority and Plaintiff spoke about the services Priority would provide before finalization of the Agreement, including obtaining Plaintiff's credit report, which the Agreement ultimately authorized. It is clear that all of the Defendants will rely on the Agreement as a defense for their actions, which makes Plaintiff's claims intimately connected to the Agreement.

The Court also finds that the relationship between the Nonsignatory Defendants and Priority is sufficient to compel arbitration. In California, "[a] nonsignatory to an agreement to arbitrate . . . may invoke arbitration against a party, if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate." *Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, 129 Cal. App. 4th 759, 765 (2005). Plaintiff's FAC alleges preexisting relationships between all the Parties, including: Plaintiff's allegation that Neil Billock is the owner of Priority and the director of EC Lending, FAC ¶ 25; the Agreement explicitly names GTPD as a party that may obtain Plaintiff's credit report, ECF 12-1 at 1; and that Universal Credit Services procured Plaintiff's credit report on behalf of Defendants, *see* FAC ¶ 21.

Based on the Court's finding that Plaintiff's claims are intertwined with the Agreement and an interconnected relationship between the Nonsignatory Defendants and Priority exists, the Court **GRANTS** Defendants' Motion to Compel Arbitration as it pertains to Plaintiff's claims against the Nonsignatory Defendants. As with the claims against Priority, the arbitrator may ultimately decide that Plaintiff's claims are not in fact subject to arbitration. Therefore, the Court **STAYS** those claims, rather than dismissing them.

17-CV-2352 JLS (BLM)

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion and **COMPELS** arbitration of all of Plaintiff's causes of action. As noted above, the arbitrator may determine that Plaintiff's claims are not subject to the agreement to arbitrate. Thus, dismissal of Plaintiff's claims is inappropriate. Accordingly, the case is **STAYED** pending the completion of arbitration proceedings, pursuant to 9 U.S.C. § 3. The parties are **ORDERED** to file a status update on arbitration proceedings every 120 days and within 15 days of completion.

**IT IS SO ORDERED.**

Dated: March 18, 2019

Hon. Janis L. Sammartino
United States District Judge

9